UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISRAEL ALBERTO RIVAS GOMEZ and JOHN DOE, aka "Marcos Castro,"<br><br>Defendants. | No. 1:18-cr-00002-NONE-SKO<br><br>ORDER DENYING MOTION FOR CHANGE OF VENUE<br><br>(Doc. Nos. 88, 91, 168) |
|---|---|

    Before the court is defendant Israel Albert Rivas Gomez's motion for a change of venue filed on April 2, 2020. (Doc. No. 88.) Co-defendant Marcos Castro has joined in the motion. (Doc. No. 91.) Defendants argue that pre-trial publicity related to both this case and more generally to the gang Mara Salvatrucha, or MS-13 as it is commonly called, renders it impossible to seat an impartial jury within the Fresno Division of the Eastern District of California. (Doc. No. 88 at 2–3.) For the following reasons, the court DENIES the motion.

**BACKGROUND**

    Defendants are charged in a two-count indictment with kidnapping in aid of racketeering and murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1). (Doc. No. 13.) The indictment alleges that both defendants Rivas Gomez and Castro are members or associates of Mara Salvatrucha, or MS-13, and that the charged crimes were committed "for the purpose of

gaining entrance to and maintaining and increasing position in" that organization. (*Id*. at 13, 14.) MS-13, in turn, is alleged in the indictment to be "an enterprise engaged in racketeering activity." (*Id*.)

On April 2, 2020, Rivas Gomez filed a motion for change of venue, arguing that pre-trial publicity concerning this case, including the victim, and more importantly, general pre-trial publicity about the nature of MS-13 and the violent acts perpetrated by some MS-13 members, forecloses any possibility of a fair trial in this case by an impartial jury in Fresno. (Doc. No. 88 at 2–3, 6–7.) He contends that this is an "extreme case" due to "adverse" MS-13 press coverage and argues that prejudice must be presumed in this instance. (*Id*. at 6.) On April 6, 2020, defendant Castro joined Rivas Gomez's motion. (Doc. No. 91.) On September 24, 2020, Rivas Gomez filed a supplement to his motion including more exhibits and arguing that more recent publicity concerning MS-13 from sources such as political campaigns and a Fox News host, and the recent COVID-related death of a law enforcement officer associated with this case, further undermine the possibility of seating an impartial jury. (Doc. No. 168.) The court has heard arguments on this and other pretrial motions filed by defendants. (Doc. No. 174.)

## LEGAL STANDARD

"To support a change of venue motion," a defendant "must demonstrate either actual or presumed prejudice." *Daniels v. Woodford*, 428 F.3d 1181, 1211 (9th Cir. 2005). "Prejudice is presumed only in extreme instances when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime." *Id*. (quotations and citation omitted). The presumption applies to cases in which "the adverse publicity is so pervasive and inflammatory that the jurors cannot be believed when they assert that they can be impartial." *United States v. Croft,* 124 F.3d 1109, 1115 (9th Cir. 1997).

"Three factors should be considered in determining presumed prejudice: (1) whether there was a barrage of inflammatory publicity immediately prior to trial, amounting to a huge [ ] wave of public passion; (2) whether the news accounts were primarily factual because such accounts tend to be less inflammatory than editorials or cartoons; and (3) whether the media accounts contained inflammatory or prejudicial material not admissible at trial." *Daniels*, 428 F.3d at

2

1211 (quotations and citation omitted).

**ANALYSIS**

Here, defendants' showing to date is insufficient to demonstrate presumed prejudice. The court need not address each deficiency of defendants' compilation of exhibits. However, among the issues, the numerosity of the media submitted by the defendants in support of their motion is misleading.

The numerosity issues include, but are not limited to, the following:  a not insignificant number of the newspaper articles contained in defendants' compilation do not mention MS-13 *at all*  (or either defendant named in the indictment in this case, for that matter) (*e.g.*, Doc. Nos. 89-3 at 1–4, 15–18; 89-7 at 1–33); nearly identical media are included more than once because the item appeared simultaneously (or nearly so) in different publications or on different broadcast channels (meaning the item was available to a broader audience but the amount of coverage reaching any single person was diluted) (*e.g.*, Doc. Nos. 89-3 at 5–6 & 89-5 at 3 (top), 4); several videos included by the defendants in their submissions were obtained from the *Fresno Bee*, thus they were not broadcast, require an individual to actively seek them out, and potentially reside behind a paywall (*e.g.*, Doc. No. 89-1); other media listed or provided reside behind a paywall or otherwise require purchase or a subscription to access (paid or not), greatly reducing transmission and dissemination of the media (*e.g.*, Doc. No. 89-9 (miscellaneous items listed)); editorialized and potentially inflammatory media targeting registered Republicans and conservative-leaning independent voters, even if 100 percent successful in reaching their audiences, which is improbable, still would reach less than half of registered voters residing within boundaries of the Fresno Division of this court (according to defendant Rivas Gomez's numbers) and, in any event, the court finds that the evidence presented to date does not establish that the media coverage amounts to a "huge wave of public passion" (Doc. No. 168 at 2, 5–8); and finally, as defendants themselves note, the evidence they have presented includes media spanning the past five years (Doc. No. 88 at 3).  In short, defendants' showing to date fails to establish that a "barrage" of publicity has occurred "immediately prior to trial."  *Daniels*, 428 F.3d at 1211.

/////

Further, the majority of media coverage submitted by defendants is fairly characterized as merely factual and not inflammatory in nature. The court noted only two written opinion pieces, one of which was not published locally (Doc. Nos. 89-3 at 41–42; 89-6); one letter to the editor (or similar submission) (Doc. No. 89-3 at 43); and only a small number of long-form pieces that provided extensive interviews with and quotes from family and friends of victims (*e.g.*, 89-3 at 26–40; 89-4 at 1–17). The latter coverage was still largely factual in nature, though certainly the interviews and quotes injected emotion. However, even if the court considers this injection of emotion to be inflammatory, without deciding the issue, only a relatively small portion of the totality of media coverage submitted to the court could be reasonably considered to be anything but primarily factual.

The court notes that an uncommon circumstance has arisen here, involving the passing before trial of a law enforcement officer who worked on the investigation of this case. However, those circumstances do not resemble the facts of other cases in which changes of venue have been deemed appropriate due to the case involving the death of a law enforcement officer. (Doc. No. 168 at 3–4, 10.) This is true even if the officer in this case will be impeached at trial. (*Id*.) Specifically, here, the law enforcement officer in question unfortunately passed away from COVID-19. In comparator cases, the officers were murdered, allegedly at the hands of the defendants charged in those cases. *See Daniels*, 428 F.3d at 1181 (granting a state prisoner's habeas petition on multiple grounds, including the trial court's denial of a venue change where the state prisoner was charged with the murder of two police officers and the pre-trial publicity related to those murders was inflammatory and had saturated the community); *United States v. Sablan*, No. 1:08-cr-00259-PMP, 2014 WL 7335210, *1 (E.D. Cal. Dec. 19, 2014) (granting a change of venue after the inmate-defendants were charged with killing a federal correctional officer at a detention facility, with the court citing in part "the unusually high concentration of correctional facilities within the District, which play a major role in the economy and culture of the communities comprising the Fresno Division").

As it relates specifically to the defendants charged in this case, the court has found no inadmissible "inflammatory" coverage or "prejudicial material" in the media coverage submitted

4

by defense counsel mentioning either defendants Rivas Gomez or Castro. *See Daniels*, 428 F.3d at 1211.

Finally, the court notes the considerable populace, geographic spread, and diverse settings from which a potential jury pool will be drawn in the trial of this case. The Supreme Court has stated that the "potential for prejudice" from pre-trial publicity is "mitigated by the size" of a potential jury pool. *Skilling v. United States*, 561 U.S. 358, 382 (2010) (quoting and citing *Mu'Min v. Virginia*, 500 U.S. 415, 429 (1991)). In this regard, in *Skilling*, a case concerning in part a motion to transfer venue, the Supreme Court observed the following when examining Houston as a source for a jury pool: "Given this large, diverse pool of potential jurors, the suggestion that 12 impartial individuals could not be empaneled is hard to sustain." The same is no less true of the Fresno Division of the Eastern District of California, one of the largest districts in the United States in terms of square miles.

For the reasons explained above, defendants' motion for a change of venue (Doc. Nos. 88, 91, 168) is denied, without prejudice to a renewal of that motion during jury selection if appropriate.

IT IS SO ORDERED.

Dated: **February 8, 2021**                    /s/ Dale A. Drozd
                                               UNITED STATES DISTRICT JUDGE