UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISRAEL ALBERTO RIVAS GOMEZ and JOHN DOE aka "Marcos Castro,"<br><br>Defendants. | No. 1:18-cr-00002-NONE-SKO<br><br>ORDER DENYING DEFENDANT RIVAS GOMEZ'S MOTION FOR EVIDENTIARY HEARING AND MOTION TO SUPPRESS STATEMENTS<br><br>(Doc. Nos. 92, 166) |

Defendant Israel Alberto Rivas Gomez moves to suppress his statements given on December 21, 2017 and December 26, 2017 on the grounds that law enforcement officers inadequately advised him of his *Miranda* rights. (Doc. Nos. 92; 131.) Defendant further contends that his December 26, 2017 statement should be suppressed because law enforcement unnecessarily delayed in bringing him before a federal magistrate judge for arraignment, in violation of Rule 5 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3501, and the rule announced by the Supreme Court in *McNabb v. United States*, 318 U.S. 332 (1943), and *Mallory v. United States*, 354 U.S. 449 (1957), authorizing suppression of any confession obtained during a period of unreasonable delay before appearance for purposes of arraignment and advisement of rights by the court. (Doc. No. 92 at 14.) On May 15, 2020, the government filed an opposition to that motion, arguing that the *Miranda* advisements given to defendant Rivas Gomez by Fresno County Sheriff's Department Detectives Jose Mora and Adam Maldonado on December 21, 2017

1

and December 26, 2017 were sufficient. (Doc. No. 101.) The government contends that defendant Rivas Gomez knowingly and voluntarily waived his rights when making his statements to the detectives. (*Id.* at 5.) Finally, the government argues that the right of prompt presentment was not violated where defendant Rivas Gomez made his initial appearance at the first possible hearing calendar after the federal criminal complaint charging him was filed. (*Id.* at 6.) On June 25, 2020, defendant Rivas Gomez filed an amended reply in support of his motion to suppress the statements. (Doc. No. 131.) On September 22, 2020, defendants Rivas Gomez and Marcos Castro filed a joint defense motion for evidentiary hearing with respect to their motions to suppress. (Doc. No. 166.) On September 30, 2020, the government opposed the motion for an evidentiary hearing. (Doc. No. 173.)

Hearings on these motions were held on October 1 and 15, 2020. Assistant United States Attorneys Kathleen Servatius and Ross Pearson appeared at the hearing on behalf of the government. Federal Defender Heather Williams and Assistant Federal Defender Erin Snider appeared on behalf for defendant Rivas Gomez and attorney Kevin Little appeared on behalf of defendant Marcos Castro.

The nature of this criminal prosecution has been summarized in the court's prior order and need not be repeated here. This order addresses only defendant Rivas Gomez's motion to suppress his statements to law enforcement officers.

**A.   Factual Background as to Defendant Rivas Gomez**

The facts relevant to this motion are as follows.[1] On December 21, 2017, defendant Rivas Gomez was detained by Fresno County Sheriff Detective Andrew Solis and Deputy Briana Leon

---

[1] These facts are derived from the parties' briefs (Doc. Nos. 92, 101, 131), translated transcripts of the interviews at issue (Doc. Nos. 93-8; 93-9; 93-10; 93-18; 101-4; 101-5; 170-1), and video recordings of the December 21, 2017 and December 26, 2017 interviews (Sealed Government Exs. 11 & 12). Defendant Rivas Gomez and the government submitted different transcripts of the December 21, 2017 and December 26, 2017 interviews translated into English. (*See* Doc. Nos. 93-8; 93-9; 93-10; 93-18; 170-1; 101-4; 101-5; 111; 112.) FBI Language Analyst Sabrina Jennings attests to the accuracy of the government's December 21, 2017 and December 26, 2017 translations. (Doc. No. 101-13.) Defendant Rivas Gomez noted at the October 1, 2020 hearing and in its briefing that the December 26, 2017 Salvadorian English translation draft is not yet complete. (*See* Doc. No. 170 at 1.)

2

1   at his home in Mendota, CA at approximately 6:00 a.m. and taken to the Fresno County Sheriff's
2   Department Headquarters, where he arrived between 7:00 a.m. and 8:00 a.m. (Doc. Nos. 92 at 2–
3   3; 93-2 at 8; 93-3 at 3; 93-5.) At approximately 4:30 p.m., Fresno County Sheriff's Homicide
4   Detectives Adam Maldonado and Jose Mora began questioning defendant Rivas Gomez. (Doc.
5   No. 92 at 3; 93-7 at 1.)
6       After asking Rivas Gomez a series of personal history questions, Detective Mora read
7   Rivas Gomez his *Miranda* rights from a Spanish-language *Miranda* card and asked him if he
8   understood those rights. (Doc. Nos. 93-8 at 18–19; 93-9 at 17; Government's Sealed Ex. 11 at
9   19:40–20:50; Doc. No. 101 at 8; Doc. No. 101-4 at 2–3; *see also* Doc. No. 92 at 4.) Defendant
10  Rivas Gomez immediately indicated that he did not understand what Detective Mora had said
11  with respect to the appointment of counsel on his behalf at no charge to him. (Doc. Nos. 93-8 at
12  19; 93-9 at 17; 101-4 at 3.) Specifically, defendant Rivas Gomez sought clarification as to that
13  aspect of the advisement, by asking the detective "Like some taxes?," "what taxes?" or "some
14  taxes?" (*Id.*) Detective Maldonado responded to that inquiry by stating "Free of charge" and
15  "Without cost." (Doc. Nos. 93-8 at 19; 93-9 at 17; 101-4 at 3; Government's Sealed Ex. 11 at
16  19:40–20:50.) Defendant Rivas Gomez immediately replied, "Oh, yeah. Like a free attorney"
17  and "Oh, I see, like a free lawyer?" (Doc. Nos. 93-8 at 19; 93-9 at 17; 101-4 at 3; Government's
18  Sealed Ex. 11 at 19:40–2-:50.) Detective Mora responded "yes." (*Id.*) When asked if he then
19  understood, defendant Rivas Gomez answered affirmatively. (*Id.*) (Doc. Nos. 93-8 at 19; 93-9 at
20  17; 101-4 at 3.) Other than as to his rights with respect to the appointment of counsel, regarding
21  which he received clarification when sought, after being read each aspect of his rights defendant
22  Rivas Gomez indicated that he understood the advisement provided to him. (*Id.*) Moreover, the
23  video recording of defendant Rivas Gomez's interview reflects that he also made nonverbal
24  gestures (i.e., nodding) that are reasonably interpreted as indicating that he understood the
25  *Miranda* warnings being given to him. (Doc. Nos. 93-8 at 18–19; 93-9 at 16–17; 101-4 at 2–3;
26  Government's Sealed Ex. 11 at 19:40–20:50.)
27      This first interrogation of defendant Rivas Gomez lasted approximately three hours,
28  ending at approximately 7:30 p.m. on December 21, 2017. At approximately 8:00 p.m. that night,

1  Detectives Maldonado and Mora drove Rivas Gomez to a field outside of Mendota, where Rivas
2  Gomez directed them to the body of the victim.  (Doc. Nos. 92 at 7; 101 at 11.)  A deputy then
3  transported defendant Rivas Gomez back to Fresno County Jail where he was booked on state
4  charges of murder, kidnapping, and conspiracy to commit murder, including gang enhancements.
5  (Doc. Nos. 101 at 11; 101-7.)
6        The following day, Friday, December 22, 2017, at approximately 5:00 p.m., FBI Agent
7  Ryan Demmon met with United States Magistrate Judge Barbara A. McAuliffe in her chambers,
8  where she signed the federal criminal complaint, and Agent Demmon's affidavit in support
9  thereof, charging Rivas Gomez with kidnapping and murder in aid of racketeering and conspiracy
10  to kidnap and murder in aid of racketeering.  (Doc. No. 101-12 ¶ 5.)
11        On Tuesday, December 26, 2016, at approximately 7:30 a.m., Detectives Mora and
12  Maldonado questioned defendant Rivas Gomez again at the Fresno County Sheriff's Department.
13  (Doc. Nos. 92 at 7; 101 at 13; 131 at 5–8; 170-1 at 1.)  This interview was also recorded, and both
14  parties have submitted transcriptions of it.  (Doc. Nos. 93-18 at 1–2; 101-5; 131 at 5–8; 170-1.)
15  Before commencing this second interview, Detective Maldonado again advised defendant Rivas
16  Gomez of all the *Miranda* warnings read from his department-issued Spanish version of the
17  *Miranda* warnings card, and asked Rivas Gomez if he understood.  (Doc. Nos. 93-18; 101 at 13;
18  101-5 at 2–3; 131 at 5–8; Sealed Government Ex. 12 at 4:43–5:57; *see also* Doc. No. 170-1 at 1.)
19  Defendant Rivas Gomez once again responded "yes" after being read each aspect of that
20  advisement of rights, indicating that he understood, and did not ask any follow-up questions at
21  that time.  (Doc. Nos. 93-18 at 1–2; 101-5 at 2–3; 131 at 5–8; 170-1 at 1–2.)  Detectives Mora and
22  Maldonado proceeded with their interview of Rivas Gomez.  (*Id.*)  This second interrogation of
23  the defendant lasted approximately 1.5 hours.  (*See* Doc. No 170-1 at 3.)  Defendant Rivas
24  Gomez was then transported to the federal courthouse in Fresno where he made his initial
25  appearance for arraignment in this case on the afternoon of December 26, 2017.  (Doc. No. 6.)

26  **LEGAL STANDARDS**

27        The Fifth Amendment to the United States Constitution provides that "[n]o person ... shall
28  be compelled in any criminal case to be a witness against himself[.]"  U.S. Const. amend. V.  The

4

Supreme Court has "recognized that custodial interrogations, by their very nature, generate 'compelling pressures which work to undermine the individuals will to resist and to compel him to speak where he would not otherwise do so freely.'" *Moran v. Burbine*, 475 U.S. 412, 420 (1986) (quoting *Miranda*, 384 U.S. at 467). "To combat this inherent compulsion, and thereby protect the Fifth Amendment privilege against self-incrimination, *Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused." *Moran*, 475 U.S. at 420; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *United States v. IMM*, 747 F.3d 754, 764 (9th Cir. 2014). Specifically, the Supreme Court has held the Constitution requires:

> that a person questioned by law enforcement officers after being "taken into custody or otherwise deprived of his freedom of action in any significant way" must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."

*Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda*, 384 U.S. at 444); *see also IMM*, 747 F.3d at 764. "An officer's obligation to administer *Miranda* warnings attaches . . . only where there has been such a restriction on a person's freedom as to render him in custody." *Stansbury*, 511 U.S. at 322 (internal quotation marks omitted) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). The Supreme Court has also explained as follows:

> The prophylactic *Miranda* warnings are not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected. Reviewing courts therefore need not examine *Miranda* warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably conve[y] to [a suspect] his rights as required by *Miranda*.

*Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (internal citations and quotations omitted). "For inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, the defendant's 'waiver of *Miranda* rights must be voluntary, knowing, and intelligent.'" *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998) (quoting *United States v. Binder*, 769 F.2d 595, 599 (9th Cir. 1985)); *see also United States v. Shi*, 525 F.3d 709, 727 (9th Cir. 2008). "A valid waiver of *Miranda* rights depends upon the 'totality of the

circumstances including the background, experience, and conduct of defendant.'" *Shi*, 525 F.3d at 727 (quoting *Garibay*, 143 F.3d at 536). "To satisfy this burden, the prosecution must introduce sufficient evidence to establish that under the 'totality of the circumstances,' the defendant was aware of 'the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Garibay*, 143 F.3d at 536–37 (quoting *Moran*, 475 U.S. at 421); *see also United States v. Younger*, 398 F.3d 1179, 1185 (9th Cir. 2005). Moreover, there is a presumption against waiver of one's *Miranda* rights and a heavy burden of showing a valid waiver by a preponderance of the evidence is on the prosecution. *Colorado v. Connelly*, 479 U.S. 157, 167–68 (1986); *United States v. Bernard S.*, 795 F.2d 749, 752 (9th Cir. 1986); *Shi*, 525 F.3d at 727–28; *see also Garibay*, 143 F.3d at 537 ("The government's burden to make such a showing 'is great,' and the court will 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'") (quoting *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984). Courts are to consider the following factors in determining whether a defendant "knowingly and intelligently waived [her] constitutional rights":

> (1) whether the defendant signed a written waiver; (2) whether the defendant was advised of his rights in his native tongue; (3) whether the defendant appeared to understand his rights; (4) whether a defendant had the assistance of a translator; (5) whether the defendant's rights were individually and repeatedly explained to him; and (6) whether the defendant had prior experience with the criminal justice system.

*Garibay*, 143 F.3d at 538 (internal citations omitted); *see also United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007).[2]

## ANALYSIS

**A.    Motion to Suppress and Motion for Evidentiary Hearing**

As noted, defendant Rivas Gomez has moved for an evidentiary hearing in connection with his motion to suppress his statements made to law enforcement officers. (Doc. No. 166.)

---

[2] Although no written waiver of Miranda rights is required (*see United States v. Calise*, 996 F.2d 1019, 1022 (9th Cir. 1993)), the absence of a signed waiver form certainly does not aid the government in satisfying its heavy burden of establishing by a preponderance of the evidence that the waiver of *Miranda* rights was voluntary, knowing, and intelligent. *Garibay*, 143 F.3d at 536–37 84).

6

Specifically, Rivas Gomez seeks an evidentiary hearing regarding the Spanish translations of the *Miranda* advisements given to him on December 21 and 26, 2017. He also seeks an evidentiary hearing to develop the record regarding the alleged delay in bringing him for an initial appearance before any court, state or federal, in connection with his argument that his statements to law enforcement during his interrogation on December 26, 2017, should be suppressed due to that allegedly unreasonable delay. (*Id.* at 2.)

Defendant Rivas Gomez has not submitted his own declaration in support of his motion. Nonetheless, his counsel proffers that the defendant would testify that he did not understand the *Miranda* rights read to him on either December 21, 2017 or December 26, 2017[3] and that were an evidentiary hearing held the defense would "call one to two Spanish interpreters and/or translators with at least one carrying expertise or experience in Salvadorian Spanish eccentricities."[4] (*Id.*; *see also* Doc. No. 92 at 6–7.) Based upon this proffer, defendant Rivas Gomez argues "[t]here are factual disputes concerning what was said in Spanish and how it translates versus how it is interpreted into English, as well as what Rivas Gomez understood as his rights and whether any knowing or voluntary waiver of them occurred." (Doc. No. 166 at 3.)

       1.     December 21, 2017 Interrogation

For the reasons explained below, defendant Rivas Gomez's motion to suppress his statements made at his December 21, 2017 interrogation and his request for an evidentiary

---

[3] The defense has submitted the declaration of Federal Defender staff interpreter/assistant investigator Edgar Salazar. (Doc. No. 93-11.) Investigator Salazar declares that on March 10, 2020, he met with defendant Gomez Rivas to read a Spanish language transcript of the defendant's December 21, 2017 interrogation by Detective Maldonado. (*Id.*) Salazar states that when he asked defendant Rivas Gomez if he understood the advisements given to him by Detective Maldonado on that date, the defendant answered that "he did not really understand what Detective Maldonado was saying to him." (*Id.*) Salazar also states that during this meeting, the defendant explained that "by the time this interview took place, he had not slept in three days, was very tired and confused and that all he wanted to do was go home." (*Id.*)

[4] Defense counsel notes that neither the identity of any defense interpreter nor the final versions of any defense translation of the interrogation has been disclosed to the government. (Doc. No. 166 at 2 n.1.) Defense counsel states that as of the filing of the pending motion [September 22, 2020], those transcripts were not yet completed or proofread and that the various impacts of the COVID-19 pandemic and other factors had delayed defense preparation in this regard. (*Id.*)

hearing in that regard will be denied.

"An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (citing *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986), *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990), *United States v. Irwin*, 612 F.2d 1182, 1187 n.14 (9th Cir. 1980) and *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972)). "[T]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a desire to cross-examine." *United States v. Marcello*, 731 F.2d 1354, 1358 (9th Cir. 1984)); *United States v. Woodson*, No. CR 11-00531 WHA, 2011 WL 5884913, at *6 (N.D. Cal. Nov. 23, 2011) (denying a defense request for an evidentiary hearing because "mere refusal to accept the uncontradicted evidence does not create a material issue of fact"); *United States v. Walker*, 239 F. Supp. 3d 738, 739 (S.D.N.Y. 2017) ("While [an evidentiary hearing] might have been warranted if there were important credibility issues that could not be addressed from the paper record, the defendant has made no showing that that is the case here.").

In *United States v. Rodriguez-Hernandez*, the Ninth Circuit held that a defendant's after-the-fact declaration was not sufficiently specific to create a contested issue of fact where the defendant stated he did not understand that he had the right to an appointed attorney to represent him before he answered the agents' questions, or that the government would pay for a lawyer. *See United States v. Rodriguez-Hernandez*, No. 05-50077, 2007 WL 135686, at *1 (9th Cir. 2007).[5] The court also held that the conclusory declaration failed to establish a significant material dispute about whether his waiver was voluntary, knowing, and intelligent. *See id.* ("[defendant] was advised of his rights in Spanish; he stated at the time that he understood each of the rights . . . .") (citing *United States v. Garibay*, 143 F.3d 534, 538 (9th Cir. 1998)); *see also United States v. Razo-Quiroz*, No. 1:19-cr-00015-DAD-BAM, at 11–13 (E.D. Cal. July 11, 2019) (Doc. No. 351) (denying motions for an evidentiary hearing and to suppress statements where the

---

[5] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1  defendant heard *Miranda* warnings several times in her native language, did not indicate she was
2  confused as she had in a prior interview, and stated without pause that she understood her rights).
3       Here, as noted, defendant Rivas Gomez has not submitted a declaration stating that he did
4  not understand the advisement of *Miranda* rights as given to him by detectives on December 21,
5  2017.  Even if he had submitted such a declaration, neither an after-the-fact declaration from
6  defendant Rivas Gomez nor the hearsay declaration that has been submitted by the defense
7  investigator would be of much value in assessing whether defendant Rivas Gomez knowingly and
8  intelligently waived his rights after receiving the *Miranda* warnings given by Detectives Mora
9  and Maldonado.
10       Counsel for defendant Rivas Gomez argues that the detectives switched back and forth
11  between the formal and informal version of the "you" singular verb conjugation in Spanish and
12  that this confused defendant Rivas Gomez regarding his rights.  (Doc. No. 92 at 9.)  This
13  argument is unpersuasive.  The government has submitted the recorded December 21, 2017
14  interview of defendant Rivas Gomez for the court's review.  (Government's Sealed Ex. 11.)
15  Based on the court's own viewing of that interview, as well as a review of the transcripts both
16  parties have submitted, there is no indication that defendant Rivas Gomez was confused after
17  being read his rights.  The video recording of the December 21, 2017 interview shows that
18  Detective Mora read Rivas Gomez his *Miranda* rights from a Spanish-language *Miranda* card and
19  then asked him if he understood those rights.  (Doc. Nos. 93-8 at 18–19; 93-9 at 17;
20  Government's Sealed Ex. 11 at 19:40–20:50; Doc. No. 101 at 8; Doc. No. 101-4 at 2–3; 131 at 5–
21  8; *see also* Doc. No. 92 at 4.)  When the complete *Miranda* warnings were given to defendant
22  Rivas Gomez, he did not indicate in any way that he was confused or failed to understand that
23  warning, with the exception of Detective Mora's warning regarding the appointment of free
24  counsel.  (Doc. Nos. 93-8 at 18–19; 93-9 at 17; Government's Sealed Ex. 11 at 19:40–20:50; Doc.
25  Nos. 101 at 8; 101-4 at 2–3; 131 at 5–8; *see also* Doc. No. 92 at 4.)  As detailed above, defendant
26  Rivas Gomez initially sought clarification of his right to have appointed counsel present but, once
27  clarified by the detectives, clearly indicated his understanding that he was entitled to a "free
28  attorney."  (Doc. Nos. 93-8 at 19; 93-9 at 17; 101-4 at 3; 131 at 7; Government's Sealed Ex. 11 at

19:40–20:50.) Moreover, the video recording of the interview reflects, in the court's view, that defendant Rivas Gomez made nonverbal gestures (i.e., nodding) that are reasonably interpreted as also indicating that he understood the *Miranda* warnings given to him.[6] (Doc. Nos. 93-8 at 18–19; 93-9 at 16–17; 101-4 at 2–3; Government's Sealed Ex. 11 at 19:40–20:50.) Other than his initial indication of confusion after being read his right to have free counsel, which the detectives immediately clarified when he asked, defendant Rivas Gomez did not demonstrate any other signs of confusion or lack of understanding.[7] (*See id.*) Defense Investigator Salazar's generic declaration fails to create a dispute of fact regarding defendant Rivas Gomez's understanding of his *Miranda* rights as read to him on December 21, 2017. *See Rodriguez-Hernandez*, 2007 WL 135686, at *1.

The totality of circumstances establish that the statements of defendant to detectives on December 21, 2017 were voluntarily made. Defendant Rivas Gomez was twenty-three years old at the time of questioning (Doc. No. 101-6 at 5) and does not argue that he suffers any mental defects. While Rivas Gomez contends he had never been arrested before and has only a sixth-grade education (Doc. No. 92 at 2), nothing in the recordings or transcripts of that interview before the court (*see generally* Government's Sealed Ex. 11), suggests that he did not understand

---

[6] "If the prosecution's showing that under the totality of the circumstances the defendant was aware of [his] rights and the consequences of the decision to abandon those rights, *see Garibay*, 143 F.3d at 536, could be effectively rebutted by a later declaration by the defendant stating merely that [he] did not understand, then no oral waiver of one's rights under *Miranda* would ever be effective." *United States v. Razo-Quiroz*, No. 1:19-cr-00015-DAD-BAM, at 13 n.8 (E.D. Cal. July 11, 2019) (Doc. No. 351).

[7] Defendant Rivas Gomez also argues that the detectives did not re-advise him of his *Miranda* rights when he directed them to the decedent's body after his interrogation on December 21, 2017. (*See* Doc. No. 92 at 7.) However, defendant Rivas Gomez does not identify any statements he made during the car ride to the site which he claims should be suppressed from evidence. (*See generally id.*) In any event, because the court finds that the initial *Miranda* advisements given to the defendant were sufficient, the detectives were under no duty to re-administer *Miranda* advisements to the defendant after a mere thirty-minute break in questioning. *See United States v. Andaverde*, 64 F.3d 1305, 1312 (9th Cir. 1995) ("This circuit in *United States v. Nordling* . . . held that, because the police had advised the suspect of his rights and 'no appreciable time had elapsed' between the end of the police interrogation and the beginning of the narcotics investigation, the narcotics agents were not required to readminister the warnings.") (collecting cases).

the advisement of rights provided to him by the detectives.  *See Hernandez v. Ducart*, 824 F. App'x 491, 493–94 (9th Cir. 2020) (affirming that while maturity is relevant in determining police coercion, defendant had endured only two hours of questioning, received *Miranda* warnings, and was able to "parry the officers with some agility while maintaining composure throughout").  Notably, defendant Rivas Gomez does not allege that he was threatened with physical force or otherwise by law enforcement officers.  Indeed, the room where the interrogation took place was well lit and defendant was not handcuffed during his questioning.  *See Hernandez*, 824 F. App'x at 493–94.

Defendant Rivas Gomez further argues that detectives did not inform him what they were investigating or why he had been held in custody for nine hours.  (Doc. No. 92 at 6.)  Title 18 U.S.C. § 3501(b) provides as follows:

> The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.
>
> The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

Thus, while whether a defendant knew of the nature of the investigation is a factor courts consider in determining whether a waiver of one's rights is voluntary, its absence is not dispositive as to the voluntariness of the suspect's statement.  *See Andaverde*, 64 F.3d at 1311–12 ("A defendant need not be advised before he confesses of the specific statute he is suspected of violating") (citations omitted).  Likewise, that the defendant was in custody for approximately nine hours before being questioned by detectives is not dispositive as to the voluntariness of his statements to police.  *See Cook v. Kernan*, 948 F.3d 952, 968–69 (9th Cir. 2020) ("The factors to be considered include the degree of police coercion; the length, location and continuity of the interrogation; and

1    the defendant's maturity, education, physical condition, mental health, and age.") (quoting *Brown*
2    *v. Horell*, 544 F.3d 969, 979 (9th Cir. 2011). The court notes that the questioning of defendant
3    Rivas Gomez occurred the same day he was arrested. *See Andaverde*, 64 F.3d at 1311 (noting
4    that the defendant's questioning on the same day of his arrest "clearly weights in favor of
5    voluntariness"); *see also United States v. Kremmerer*, No. 3:19-cr-02513-GPC, 2020 WL
6    4737173 (S.D. Cal. Aug. 14, 2020) (holding a *Miranda* waiver to be voluntary despite the
7    defendant being held in custody for six hours, with a portion of that time spent in handcuffs or an
8    ankle chain).

9         In this case, defendant Rivas Gomez was interrogated for approximately 3.5 hours.
10   Courts have found interrogations of similar length not to be improperly prolonged questioning for
11   purposes of assessing voluntariness. *See Berghuis v. Thompkins*, 560 U.S. 370, 387 (2010)
12   (finding that the duration of a three-hour interrogation alone was insufficient to establish coercion
13   unless it were "accompanied . . . by other facts indicating coercion, such as an incapacitated and
14   sedated suspect, sleep and food deprivation, and threats."); *Hernandez*, 824 F. App'x at 493
15   (holding a confession to be voluntary where the questioning lasted just over two hours, included
16   four breaks, defendant was offered food and water, and his restraints were loosened).[8]

17        Most importantly, the undersigned has reviewed the recorded December 21, 2017
18   interview. The detectives were calm and professional, offering defendant Rivas Gomez food and
19   water, and even eliciting smiles from him at one point when discussing Salvadorian food. (*See*
20   *generally* Government's Sealed Ex. 11; Doc. No. 93-9 at 16.) There is simply no evidence before
21   the court suggesting coercion or that would support a finding that defendant Rivas Gomez's
22   statements to the detectives were not voluntarily made. *See Moran*, 475 U.S. at 421; *Kernan*, 948
23   F.3d at 968–69. While defendant Rivas Gomez now argues that he was tired and had not slept in
24   three days, the evidence before the court depicts defendant Rivas Gomez sleeping in his holding

---

[8] This is certainly not, for instance, a case involving a teenage suspect, questioned for nearly thirteen hours by "tag teams" of two, three, and four detectives, while isolated, sleep deprived, and held in a room with only a straight-backed chair and no table to lean on, and relentlessly questioned even after he stopped responding while being told that he had to answer the questions being put to him. *See Doody v. Ryan*, 649 F.3d 986, 1009, 1012–13 (9th Cir. 2011) (finding a confession given under such circumstances to have been involuntary).

1   cell at times with no indication whatsoever that the detectives subjected him to sleep deprivation
2   of any kind. (Doc. No. 101-1 at 2.)

3       Given the totality of the circumstances as established by the evidence before the court, the
4   undersigned finds that defendant Rivas Gomez knowingly and voluntarily waived his *Miranda*
5   rights. The court will therefore deny his motion to suppress his statements made at his December
6   21, 2017 interrogation.

7       2.    <u>December 26, 2017 Statements</u>

8       The court also concludes that an evidentiary hearing is unnecessary to resolve defendant
9   Rivas Gomez's motion to suppress his interrogation statements made on December 26, 2017. In
10  this regard, he argues that the statements made by him that day should be suppressed because the
11  detectives provided him at that time only an abbreviated reading of his *Miranda* rights and that
12  the government failed to timely bring him before a court for his initial appearance following his
13  arrest. (Doc. Nos. 101-5 at 2–3; 131 at 14; 166 at 2.)

14      As indicated above, on December 26, 2017, Detective Maldonado gave defendant a
15  complete *Miranda* warning and in response thereto defendant Rivas Gomez indicated he
16  understood those right before making any statement to Detectives Maldonado and Mora. (Doc.
17  Nos. 93-18 at 1–2; 101-5 at 2–3; 131 at 14–16.) Nonetheless, defendant Rivas Gomez argues that
18  he still did not understand his rights prior to the December 26, 2017 interview because Detective
19  Maldonado "minimize[ed] the rights notices as a mere formality by saying . . . 'You agree that I
20  gave you the notices the other day? I have to give them to you again, and – and I ask you for the
21  same thing if you understand those notices, just you say yes or no, after – each notice, ok?'"
22  (Doc. No. 92 at 10, 13.)

23      To satisfy its burden of showing a valid waiver as to this second interview on December
24  26, 2017, the government points to Detective Maldonado's *Miranda* warning and defendant's oral
25  waiver of his rights following the giving of that advisement. While Detective Maldonado
26  prefaced the warnings by telling the defendant that the two of them had previously gone through
27  the advisement at his prior interview, Detective Maldonado nevertheless once again provided
28  Rivas Gomez the complete *Miranda* warnings. (Doc. Nos. 93-18 at 1–2; 101-5 at 2–3; 131 at 14–

13

16.) At that point, defendant Rivas Gomez had heard the *Miranda* warnings more than once in Spanish and, if he was confused about any one of the advisements within that warning, he could have indicated such, as he had on December 21, 2017 when he asked for clarification regarding his right to the appointment and presence of an attorney. Yet, he did not do so when advised of his *Miranda* rights by Detective Maldonado on this occasion, instead stating without pause that he understood his rights and proceeding to answer questions put to him. (Doc. Nos. 93-18 at 1–2; 101-5 at 2–3; 131 at 14–16; Government's Sealed Ex. 12 at 4:43–5:50.) Accordingly, the court finds defendant Rivas Gomez's argument in this regard to be unpersuasive.

For the same reasons discussed in connection with defendant's December 21, 2017 interview, the court does not find any of the hallmarks of a coercive, involuntary confession to be present during his December 26, 2017 interrogation. Rather, the court concludes that defendant Rivas Gomez's waiver of his rights and his statements thereafter were knowing, intelligent, and voluntary. Therefore, with respect to defendant Rivas Gomez's argument that he received an abbreviated or minimized *Miranda* advisement, his motion to suppress his statements made to Detectives Maldonado and Mora on December 26, 2017 will be denied.

The court is also not persuaded by defendant Rivas Gomez's argument that the government violated his right to prompt initial appearance before a court. (Doc. Nos. 92 at 14–17; 166 at 2.) The Supreme Court has held that 18 U.S.C. § 3501(c), upon which defendant relies in part in moving to suppress his statements, does not apply to statements made by a person who is being held solely on state charges. *United States v. Alvarez-Sanchez*, 511 U.S. 350, 350–52 (1994). In that case the Supreme Court reasoned:

> Because the term delay presumes an obligation to act, there can be no "delay" in bringing a person before a federal judicial officer until there is some obligation to do so in the first place. Such a duty does not arise until the person is arrested or detained for a federal crime. Although a person arrested on a federal charge by any officer—local, state, or federal—is under "arrest or other detention" for the purposes of § 3501(c) and its safe harbor period, one arrested on state charges is not. This is true even if the arrest officers believe or have cause to believe that federal law also has been violated, because such a belief does not alter the underlying basis for the arrest and subsequent custody.

*Id.* at 350 (holding § 3501(c) did not apply where defendant was arrested on state charges by local

14

authorities on Friday, was questioned by federal authorities the following Monday, a criminal complaint was prepared that same day, and was presented to a federal magistrate judge the following day). The Supreme Court in *Alvarez-Sanchez* did identify "one presumably rare scenario that might present some potential for confusion; namely, the situation that would arise if state or local authorities, acting in collusion with federal officers, were to arrest and detain someone in order to allow the federal agents to interrogate him in violation of his right to a prompt federal presentment." *Id.* at 359–60. However, there is no evidence (or even a suggestion) of any such collusion between state and federal authorities in this case.

In *Alvarez-Sanchez* the defendant was arrested on a Friday afternoon, questioned by federal authorities on the following Monday, and for reasons related to the court's congested docket, was brought to appear on the next available calendar before the magistrate judge on Tuesday. *See id.* at 352. Here, defendant Rivas Gomez was arrested on Thursday, December 21, 2017, and law enforcement authorities discovered the decedent's body late Thursday night after questioning defendant. (Doc. No. 92 at 7.) FBI Agent Demmon states in his declaration that he began preparing the affidavit in support of the criminal complaint charging defendant on Thursday night and continued working on it throughout Friday, December 22, 2017, before meeting with Magistrate Judge McAuliffe on Friday afternoon around 5:00 p.m. to swear out the affidavit and criminal complaint.[9] (Doc. No. 101-12 ¶ 3.) Because of the federal holiday on Monday, December 25, 2017, defendant Rivas Gomez was brought to the first available criminal calendar in this court on the afternoon of Tuesday, December 26, 2017, for arraignment on the complaint.

Defendant Rivas Gomez argues that he could have been brought to an initial appearance in state or federal court on December 22, 2017. (Doc. No. 92 at 7.) However, the Supreme Court explicitly rejected a similar argument in *Alvarez-Sanchez*, holding the "State's failure to arraign or prosecute respondent does not alter this conclusion." *Alvarez-Sanchez*, 511 U.S. at 359.

---

[9] Special Agent Demmon states that as he was working on the affidavit, he received additional information relevant to the investigation as officers searched and canvassed the crime scene. (Doc. No 101-12 ¶ 4.)

1 | Moreover, defendant's argument does not call into question Agent Demmon's declaration stating that he was preparing the affidavit in support of the federal criminal complaint on Thursday night and through Friday as he received additional information, as well the government's contention that the U.S. Attorney's Office requires authorization from Washington, D.C. to pursue charges involving violent crimes committed in aid of racketeering.  (Doc. No. 101 at 29 (citing U.S. Dept. of Justice Manual § 9-110.801).)

In the absence of any evidence even suggesting any collusion between state and federal authorities in order to delay defendant's initial appearance before a judicial officer, the court will deny defendant Rivas Gomez's motion to suppress his statements made at his December 26, 2017 interrogation.

**CONCLUSION**

For the reasons explained above, defendant Rivas Gomez's motion for evidentiary hearing and motion to suppress his December 21, 2017 and December 26, 2017 statements to detectives (Doc. Nos. 92, 166) are denied.

IT IS SO ORDERED.

Dated:   **February 8, 2021**                         _/s/ Dale A. Drozd_
                                              UNITED STATES DISTRICT JUDGE