UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 1:18-cr-00002-JLT-SKO |
|---|---|
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANTS' MOTIONS TO RECONSIDER PRIOR ORDERS RE CHANGE OF VENUE AND SUPPRESSION OF CERTAIN POST-ARREST STATEMENTS |
| ISRAEL ALBERTO RIVAS GOMEZ and JOHN DOE aka "MARCOS CASTRO", | |
| Defendants. | |
| | (Doc. Nos. 227, 228, 236, 327) |

**INTRODUCTION**

Defendants Israel Alberto Rivas Gomez ("Rivas Gomez") and John Doe aka "Marcos Castro" ("Castro") have submitted numerous motions *in limine* and motions for reconsideration of prior rulings in advance of the trial of this case, currently scheduled for June 14, 2022. (Doc. No. 344.) A hearing was held to address some of these motions on December 16, 2021 before District Judge Dale A. Drozd. (Doc. No. 332.) Assistant U.S. Attorneys Ross Pearson, Melanie Alsworth, Christopher Baker, and Justin Gilio appeared at that hearing on behalf of the government; Federal Defender Heather Williams appeared on behalf of defendant Rivas Gomez

/////

/////

1

and attorney Kevin Little appeared on behalf of defendant Castro. (*Id.*)[1]  For the reasons explained below, defendants' motion for reconsideration will be denied.

## ANALYSIS

**A.     Defendant Rivas Gomez's Motions For Reconsideration**

    1.     <u>Motion to Reconsider Order Denying Motion for Change of Venue (Doc. No. 227)</u>

Defendant Rivas Gomez first filed a motion for change of venue on April 2, 2020. (Doc. No. 88.)[2]  Therein he argued that pretrial publicity regarding his trial and about the MS-13 gang generally[3] rendered it "impossible" to seat an impartial jury within the Fresno Division of the Eastern District of California.  The court reviewed the applicable legal standards as well as the evidence (Doc. No. 89, 126, 168) regarding media coverage presented by the defense in support of the motion for change of venue in detail. (Doc. No. 182 at 2-5.)  Upon doing so, the court concluded that the media coverage upon which defendants relied in support of their motion was primarily merely factual, not nearly as voluminous as defendants' claimed and did not compel the granting of a change of venue. (*Id.* at 3-5.)  Accordingly, that motion was denied without prejudice to its renewal during jury selection, if appropriate. (*Id.* at 5.)

In moving to reconsider the court's denial of that motion defendant contends that "inflammatory publicity" concerning MS-13 since the court's issuance of its prior order calls for the granting of a change of venue. (Doc. Nos. 227.)  In advancing this claim, however, defendant points only to three newspaper articles, one that appeared in April in the Fresno Bee and two substantially identical articles that appeared in or about September of 2021 in the Fresno Bee and

---

[1] Though this case has been re-assigned to District Judge Jennifer L. Thurston, the motions addressed in this order are requests to reconsider prior orders previously issued by the undersigned while presiding over this action.  Moreover, the undersigned not only heard oral argument with respect to these motions for reconsideration on December 16, 2021, just prior to the case being reassigned to Judge Thurston, but is also very familiar with the facts relevant to their resolution.

[2] Defendant Castro joined in the motion for a change of venue. (Doc. No. 91.)

[3] Defendant Rivas Gomez also argued that the then-recent COVID-related death of a law enforcement officer associated with the investigation also played a role in undermining the possibility of seating an impartial jury in this case. (Doc. No. 168.)

2

the Free Press, as well as a September 2021 press release issued by the U.S. Attorney's Office for the Eastern District of California. (Doc. No. 227-1 through 3.) Those newspaper articles did report MS-13 related violence in the Fresno/Mendota area. The April 1, 2021 Fresno Bee article reported that "14 homicides took place in and around Mendota from 2015 to late 2017 and were connected by investigators to the MS-13 gang." (Doc. No 227-2 at 2.) That article, which was published almost eleven months ago, did refer to this prosecution as still pending and identified the defendants in this case by name, referring to them as "alleged MS-13 members." (*Id.* at 3.) The brief reference to the defendants and to this case specifically in the article was purely factual in nature. The remainder of the article can be fairly characterized as focusing on the lack of prosecutions in connection with other acts of violence in the Mendota/Fresno area. (Doc. 227-2.) The other two articles presented in support of the motion for reconsideration were published in or about late September of 2021 and merely provided factual coverage of a trial that the undersigned presided over in which the defendant, identified as a MS-13 member, was convicted of assault with a dangerous weapon in Aid of Racketeering in violation of 18 U.S.C. 1959 and Conspiracy to Distribute Marijuana in violation of 21 U.S.C. §§ 846 and 841. *See United States v. Lorenzo Amador*, 18-cr-207 (E.D. Cal.).[4] That case involved the stabbing of a purported Bulldog rival gang member by MS-13 gang members in Mendota as well as the latter's marijuana distribution activities.[5] Consideration of these new exhibits does not support the granting of the pending

---

[4] These two articles appear to have been based largely on the press release from the U.S. Attorney's Office with respect to the jury's verdict in that case.

[5] Defendant Rivas Gomez also relies upon an incident that took place during the trial of defendant Amador's case in which one of the jurors reported to the court during the trial that a Spanish-speaking individual had driven into the juror's neighborhood attempting to sell a cell phone. When the juror's neighbor indicated that he did not wish to purchase the cell phone, the individual drove away and yelled out, "You tell those motherfuckers!" Defendant concedes that there was no evidence suggesting that this incident had anything to do with the juror's service in the Amador trial. The undersigned conducted a thorough inquiry on the record and allowed counsel in the Amador case to inquire of the juror as well before determining that there was no cause to remove the juror in question since he had merely reported the incident to the police and to the court out of an abundance of caution and because the court had advised jurors to report any outside contact to the court and not because he associated the incident with defendant Amador or the case he was hearing as a juror. Accordingly, the court does not view this incident as have any relevance to, or providing any support for, the pending motion for reconsideration. Indeed, the

motion for reconsideration.

"To support a change of venue motion," a defendant "must demonstrate either actual or presumed prejudice." *Daniels v. Woodford*, 428 F.3d 1181, 1211 (9th Cir. 2005). "Prejudice is presumed only in extreme instances when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime." *Id*. (quotations and citation omitted). The presumption applies to cases in which "the adverse publicity is so pervasive and inflammatory that the jurors cannot be believed when they assert that they can be impartial." *United States v. Croft*, 124 F.3d 1109, 1115 (9th Cir. 1997). "Three factors should be considered in determining presumed prejudice: (1) whether there was a barrage of inflammatory publicity immediately prior to trial, amounting to a huge [ ] wave of public passion; (2) whether the news accounts were primarily factual because such accounts tend to be less inflammatory than editorials or cartoons; and (3) whether the media accounts contained inflammatory or prejudicial material not admissible at trial." *Daniels*, 428 F.3d at 1211 (quotations and citation omitted).

As discussed in the court's order denying the defendants' original motion for a change of venue, no evidence has been presented even suggesting, let alone establishing, that there has been a "barrage" of inflammatory publicity prior to the trial of this case. As the government points out, defendant has presented essentially only two new newspaper articles involving MS-13 published since the denial of defendants' motion for a change of venue over one year ago and those new press reports were primarily factual in nature. This case, quite simply, cannot be said to have drawn extensive media coverage and what mention in the media there has been in no way approaches the level of a barrage of inflammatory publicity.

/////

/////

---

undersigned observes that there was no difficulty in selecting a fair and impartial jury in the Amador case despite rather extensive *voir dire* regarding MS-13. The court recognizes that the charges brought in this case are more serious than those brought in the Amador prosecution. Nonetheless, that distinction by itself, especially absent prejudicial pretrial publicity, does not compel the granting of a change of venue in this case at this time.

Accordingly, the motion for reconsideration of the court's order denying defendants' motion for a change of venue will be denied without prejudice to a renewal of that motion during jury selection, if appropriate.

2. <u>Motion for Reconsideration of Order Denying the Motion to Suppress Statements (Doc. No. 228)</u>

Defendant Rivas Gomez was interviewed by law enforcement officers on December 21 and again on December 26, 2017. Counsel on his behalf previously moved to suppress those statements on the ground that defendant did not knowingly and voluntarily waive his *Miranda* rights before speaking to the officers. (Doc. Nos. 92, 131.) The court denied the motion based upon its review of the transcripts and video recording of defendant's statements, concluding that this evidence reflected that defendant Rivas Gomez was given appropriate *Miranda* warnings, understood the warnings given to him and knowingly and voluntarily waived his *Miranda* rights before speaking with the officers. (Doc. No. 184 at 7-14.) In that order, the court noted that defendant's *post-hoc* attestation that he had not understood the *Miranda* warning was insufficient to overcome the weight of evidence establishing otherwise. [6]

In moving for reconsideration of that order, counsel on behalf of defendant Rivas Gomez now contends that there is "newly discovered evidence" supporting suppression of his statements made to law enforcement officers. Specifically, it is now argued that defendant Rivas Gomez suffers from mental defects that prevented him from knowingly and voluntarily waiving his

---

[6] Specifically, the undersigned concluded that the video recording of the December 21, 2017 interview established that Detective Mora read defendant Rivas Gomez his *Miranda* rights from a Spanish-language *Miranda* card and asked him if he understood those rights. (Doc. Nos. 93-8 at 18–19; 93-9 at 17; Government's Sealed Ex. 11 at 19:40–20:50; Doc. Nos. 101 at 8; 101-4 at 2–3; 131 at 5– 8; see also Doc. No. 92 at 4.) Defendant Rivas Gomez did not indicate in any way that he was confused or failed to understand that warning, with the exception of Detective Mora's warning regarding the appointment of free counsel. (Doc. Nos. 93-8 at 18–19; 93-9 at 17; Government's Sealed Ex. 11 at 19:40–20:50; Doc. Nos. 101 at 8; 101-4 at 2–3; 131 at 5–8; *see also* Doc. No. 92 at 4.) As to only that aspect of the advisement, defendant initially sought clarification of his right to have appointed counsel present but, once clarified by the detectives, clearly indicated his understanding that he was entitled to a "free attorney." (Doc. Nos. 93-8 at 19; 93-9 at 17; 101-4 at 3; 131 at 7; Government's Sealed Ex. 11 at 19:40–20:50.) Moreover, the court found that defendant's nonverbal gestures (such as nodding) during the advisement indicated his understanding of the *Miranda* warnings given.

5

*Miranda* rights. After the denial of the motion to suppress his statements in February of 2021, defendant Rivas Gomez was evaluated by Psychologist Dr. Diomaris Safi, who met with defendant—all but once via phone or video call—and interviewed members of defendant's family. (Doc. No. 228-5.) Dr. Safi reported that defendant sometimes hears voices and has visions, which started when he was approximately 20 years old. (*Id.*) Further, according to his counsel, Dr. Safi concluded that, due to defendant's "low intellectual functioning" combined with the Detective Mora's poor Spanish language skills, defendant "likely did not understand his rights to remain silent or to have free counsel present during questioning, or the risk of moving forward by talking or not having a lawyer." (Doc. No. 228 at 6.)

As another judge of this district court has recently observed with respect to the legal standards applicable to motions to reconsider in criminal cases:

> Although the Federal Rules of Criminal Procedure do not expressly authorize motions for reconsideration, the Ninth Circuit has "approved of the judicial economy that results from the pretrial reconsideration of suppression orders by the district court." *United States v. Rabb*, 752 F.2d 1320, 1322 (9th Cir. 1984), *abrogated in part on other grounds by Bourjaily v. United States*, 483 U.S. 171 (1987). "No precise 'rule' governs the district court's inherent power to grant or deny a motion to reconsider a prior ruling in a criminal proceeding." *United States v. Lopez-Cruz*, 730 F.3d 803, 811 (9th Cir. 2013). It is instead a matter of discretion. *Id.*
>
> Both "simple mistakes" and "shifting precedent" might justify reconsideration of a nonfinal order. *See Martin*, 226 F.3d at 1049. This court's local rules also impose requirements on parties who request reconsideration in criminal cases. *See* E.D. Cal. L.R. 430.1(i). Among other things, a motion for reconsideration must identify what "new or different facts or circumstances" support the motion "or what other grounds" might warrant reconsideration. *Id.* 430.1(i)(3). But as is true of motions for reconsideration in civil cases, motions for reconsideration in criminal cases are almost always denied when they rest on arguments or evidence the moving party previously raised or could have raised and when denial would not cause manifest injustice. *See Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009).

*United States v. Louangamath*, No. 2:20-cr-00034-KJM, 2021 WL 5989756, at *2 (E.D. Cal., Dec. 17, 2021); *see also United States v. Feathers*, No. 14-CR-00531-LHK-1, 2017 WL 783947, at *2–3 (N.D. Cal. Mar. 1, 2017) (A district court may grant reconsideration only upon finding some "mistake," "newly discovered evidence which by due diligence could not have been

discovered before the court's decision," "fraud," or "any other reason justifying relief"—though this last option is reserved for those few cases involving "manifest injustice" and "extraordinary circumstances [that] prevented a party from taking timely action to prevent or correct an erroneous judgment.")

Here, Dr. Safi's evaluation upon which defendant relies does not compel reconsideration of the prior order denying the motion to suppress statements.[7] Significantly, Dr. Safi's evaluation relied heavily on information that this court had already considered in its order denying defendant's original motion to suppress his statements. In this regard, the undersigned was aware of and specifically considered defendant's educational history and his post-interrogation claim that he did not understand his *Miranda* rights when he waived them. (Doc. No. 184 at 7, n.3, 10, 12-13 (acknowledging and addressing defendants claims in moving to suppress his statements that he was tired and confused, was only 23 years old at the time, had only a sixth grade education and had never been arrested before). The only truly new information contained in Dr. Safi's report submitted in support of reconsideration is her finding that defendant Rivas Gomez has "lower than average" intellectual functioning and that he reports experiencing occasional hallucinations and/or hearing of "voices" since the age of 20. (Doc. No. 228-5 at 11.) But, even accepted as true, these facts do not suggest that defendant's was incapable of knowingly and voluntarily waiving his *Miranda* waiver.

Most important in this regard, Dr. Safi concluded that defendant does not suffer from any "significant cognitive deficits, typically established by IQ testing." (Doc. No. 228-5 at 12.) Further, defendant's own conclusory reports of experiencing hallucinations, even if accepted as true, do not suggest that such hallucinations or visions have ever impaired defendant's ability to interact with or understand communications by others. Nor does defendant now claim that he was experiencing hallucinations at the time he waived his rights under *Miranda* and agreed to answer the officers' questions. In short, nothing new presented by defendant Rivas Gomez in his

---

[7] Defendant Rivas Gomez has made no showing as to why in the exercise of due diligence the new evidence now offered, Dr. Safi's evaluation and report, could not have been discovered prior to the court's denial of his original motion to suppress his statements to officers.

motion for reconsideration provides a basis upon which to reconsider the court's order denying his original motion to suppress his statements made to law enforcement officers. As the court concluded in that prior order, based on its review of the transcripts and the videos recording of defendant's statements to police, there is simply "no indication that defendant Rivas Gomez was confused after being read his rights." (Doc. No. 184 at 13–14.)

**B.    Defendant Castro's Motions For Reconsideration**

       3.    <u>Motion to Reconsider Order Denying Motion to Exclude Defendant's Post-Arrest Statements (Doc. Nos. 236 at 18-22, 327 at 18-22)</u>

Defendant Castro previously moved to suppress all of his post-arrest statements made to law enforcement officers. (Doc. No. 122.) The court granted that motion in part, concluding that at a point during his interrogation on December 21, 2017, defendant Castro had invoked his right to counsel. (Doc. Nos. 201 at 17-34, 39 and 204 at 17-34, 39.) Accordingly, the court ordered that all statements made by defendant Castro after his invocation of his right to counsel on December 21 and all of his statements made to officers on December 26, 2017 would be excluded from evidence during the government's case in chief. (Id. at 39.) Defendant now moves for reconsideration of the court's order denying his motion to exclude statements made by him to police on December 19-20 and up until his invocation of the right to counsel on December 21, 2017, based solely on his contention that the court's prior order was "clearly erroneous and manifestly unjust" because "the Court's summary of the evidence supporting the defendant's contention that he was read his administrative immigration rights on December 19, 2017 belies the record." (Doc. No. 236 at 19.)

    In his original motion to suppress his earliest made statements, defendant Castro's counsel argued that Castro's waiver of his Miranda rights was not valid because he had received confusing and conflicting immigration and *Miranda* advisements with respect to his right to counsel when he was first taken into custody on December 19, 2017 and that Ninth Circuit precedent required suppression, citing *United States v. San Juan-Cruz*, 314 F.3d 384 (9th Cir. 2002). The defendant's argument in this regard relied on his counsel's contention that Castro was advised of his administrative immigration rights by Deportation Officer ("DO") Monique Jacques

8

on December 19, 2017, approximately 1.5 to 2 hours before he was Mirandized by Fresno County Sheriff's Department detectives. (Doc. Nos. 201 and 204 at 15 .) Defendant Castro's motion directed at his pre-invocation statements only had arguable merit if he was in fact informed by DO Jacques, prior to being advised of his *Miranda* rights, that in connection with his immigration rights he may be required to pay for an attorney if he desired counsel and was confused by what could be characterized as potentially conflicting advisements.

In denying the original motion to suppress these pre-invocation statements, the court found that defendant Castro had not submitted sufficient evidence that he had been advised of his administrative immigration rights by DO Jacques before being advised of his *Miranda* rights by law enforcement officers. Specifically, the court noted that defendant Castro had offered a single exhibit in support of his counsel's contention that the immigration advisement took place first, just prior to the *Miranda* warning: a Notice to Appear, Warrant, Notice of Custody Determination and Record of Deportable Alien (I-213) that was dated December 19, 2017. (Doc. No. 119 at 40–52 (Ex. 1).) On that form, DO Jacques had noted that she notified Castro of his administrative rights, but Castro's signature appears nowhere on the form. (*Id*.) Further, none of the certificates of service are signed by an officer so as to indicate that defendant Castro was served with the notices. (*Id*.) Moreover, DO Jacques submitted a sworn declaration attesting that she was "positive" she did not read defendant Castro his immigration administrative advisements on December 19, 2017, because she would have had him initial, sign, and date the forms if she had so advised him. (Doc. No. 138-8 ¶¶ 5–6.)

Defendant Castro's counsel argues that the court, in concluding that Castro had not been advised of his administrative rights on December 19, 2017, did not give proper weight to the note that DO Jacques placed on the I-213 form confirming that Castro had been advised of his rights; specifically, defendant Castro notes that this was a typed report confirming advisement, not merely a check-box on a form. (Doc. 236 at 20.) Defense counsel also opines that the court credited DO Jacquez's memory of the event, recorded in her declaration three years after the fact, with undue weight. Defense counsel argues that the dated I-213 form is more reliable than DO Jacquez's declaration and that the declaration itself does not describe the "actual" events of

1  December 19; it merely describes with DO Jacques supposes what she would have done had she
2  been acting in accordance with her custom and practice. Defendant Castro's counsel points out
3  that DO Jacques conceded in her declaration that she did not recall whether defendant Castro
4  asked her about his right to an attorney or whether she advised him of that right. (Doc. No. 138-8
5  at 2–3.)

6  Counsel on behalf of defendant Castro also contends that the court should hold an
7  evidentiary hearing on this issue. The government counters that the pending motion to reconsider
8  is merely an improper effort to "rehash old arguments" that the court has already rejected. (Doc.
9  No. 278 at 3) (citing *United States v. Brown,* No. 2:13-CR-00407-TLN, 2016 WL 6988665, at *2
10 (E.D. Cal. Nov. 29, 2016)). Further, the government asserts, even if Castro had been advised of
11 some administrative rights prior to being Mirandized on December 19, 2017, there is no evidence
12 before the court that he was told he might need to pay for an attorney in connection with
13 immigration proceedings until after he knowingly and voluntarily spoke to law enforcement
14 officers regarding his role in the kidnapping and murder of victim A.R. and thereafter provided an
15 additional statement to detectives on December 21, 2017.

16 At the hearing on the pending motion for reconsideration, counsel on behalf of defendant
17 Castro conceded that no new argument or evidence was being presented in support of that motion.
18 The court finds no basis upon which it should reconsider its prior order denying defendant
19 Castro's motion to suppress his statements made to law enforcement officers in part and granting
20 it in part. In its prior order the court noted that defendant Castro did not submit his own
21 declaration in support of his motion (Doc. Nos 201 and 204 at 6, n. 1.) Nor did his counsel then,
22 or now in moving for reconsideration, proffer any testimony from defendant Castro that he
23 actually did receive an arguably conflicting advisement regarding his right to counsel from
24 immigration and law enforcement and was thereby confused. In light of this lack of evidence, in
25 its prior the court concluded as to this aspect of defendant's motion as follows:

26 > It is undisputed that defendant Castro was not released from Fresno
> County Jail and brought for the first time to ICE headquarters in
27 > Fresno for booking until February 21, 2019 at 6:02 p.m.. (Doc. Nos.
> 138-4 at 2; 138-5 at 2–3.) It was then that ICE DO Romero read
28 > defendant Castro his immigration advisements as evidenced by I-826

10

> and I-862 forms initialed, dated, and fingerprinted by defendant Castro on that date. (Doc. No. 154 at 17 (citing Doc. No. 119 at 440–42).)
>
> There is simply no evidence then that DO Jacques read defendant Castro his immigration administrative advisements on December 19, 2017, including the potentially confusing advisement of his right to counsel without cost to the government. Rather, the uncontroverted evidence before the court establishes that defendant Castro was not read his immigration administrative advisements until the evening of December 21, 2017, when he was first booked into ICE custody. (Id. at 436–43; Doc. Nos. 138-5 at 2–3; 138-9 ¶¶ 3–5.) Thus, approximately two days passed after defendant was first read his *Miranda* rights by detectives on December 19, 2017, waived those rights and voluntarily agreed to be interviewed by detectives, before he received his immigration administrative advisements from DO Romero. (Doc. Nos. 119 at 56, 80–81, 436–43; 138-5 at 2–3; 138-9 ¶¶ 3–5.) Moreover, the second interview of defendant Castro by detectives occurred on December 21, 2017 at least 1.5 hours before he was taken into ICE custody and advised of his administrative rights by DO Romero. (See Doc. No. 138-5 at 2–3; see also Doc. Nos. 119 at 341; 154 at 14, 16.) Given this sequence of events (*Miranda* advisement, waiver of rights and interrogation, followed by later administrative advisement) there is no credible claim that defendant Castro was confused by the advisements regarding his right to have counsel appointed on his behalf and present for his interrogation by the detectives. As such, defendant Castro's motion to suppress his interrogation statements on the grounds that he received confusing and misleading advisements regarding his right to counsel as prohibited by the Ninth Circuit in *San Juan-Cruz* (Doc. No. 119 at 7 (citing *id.* at 436–41)), will be denied.

(Doc. Nos. 201 and 204 at 15-17.)

The renewed arguments advanced in support of defendant Castro's motion for reconsideration do not persuade the court that its prior order in this regard was in any way clearly erroneous or manifestly unjust. *See United States v. Raileanu*, 609 Fed. Appx. 377, 380 (9th Cir. 2015) ("Furthermore, at least one and a half to two hours separated administration of the two sets of warnings, which of course were not read by the same officer.")  Indeed, no showing has been made that could even arguably justify the granting of the motion to suppress these earliest made statements by defendant Castro to law enforcement officers under the decision in *San Juan-Cruz*. The motion to reconsider the prior order denying this aspect of defendant Castro's motion will therefore be denied.

/////

/////

**CONCLUSION**

For all of the reasons explained above:

1. Defendant Rivas Gomez's motion to reconsider his motion for a change of venue (Doc. No. 227) is denied;

2. Defendant Rivas Gomez's motion to reconsider his motion to suppress statements (Doc. No. 228) is denied; and

3. Defendant Castro's motion to reconsider his motion to exclude defendant's post-arrest statements (Doc. Nos. 236 at 18-22, 327 at 18-22) is denied.

IT IS SO ORDERED.

Dated:   **February 28, 2022**  

UNITED STATES DISTRICT JUDGE