1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,                    No.  1:18-cr-00002-JLT-SKO

12                 Plaintiff,                       ORDER RE MOTIONS IN LIMINE

13          v.                                      (Docs.  391, 393, 411, 413, 416, 417, 418, 434,
                                                    435, 451)
14    ISRAEL ALBERTO RIVAS GOMEZ and
      JOHN DOE aka "MARCOS CASTRO",
15
                     Defendants.
16

17

18          The parties have submitted numerous motions *in limine*.  For the reasons discussed on the

19    record and set forth below, the Court rules on each of the pending motions *in limine* as follows.

20    **I.      Legal Standards Governing Motions in Limine**

21          "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the

22    practice has developed pursuant to the district court's inherent authority to manage the course of

23    trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984).  The Ninth Circuit explained motions

24    in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to

25    present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004-

26    05 (9th Cir. 2003) (citations omitted).  Motions *in limine* are "an important tool available to the

27    trial judge to ensure the expeditious and evenhanded management of the trial proceedings."

28    *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997). "[A] motion in

                                                    1

limine should not be used to resolve factual disputes or weigh evidence," *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000).[1]

## INTERROGATION MOTIONS

All parties have submitted motions or identified experts related to the Defendants' interrogation statements.  Castro has renewed a prior motion to suppress statements made during his interrogation; submitted a separate motion to suppress his interrogation statements on new legal grounds per *Chambers v. Florida*, 309 U.S. 227 (1940); disclosed an intention to solicit expert testimony as to the voluntariness of his interrogation statements; and subpoenaed two ICE deportation offers that were involved with his immigration arrest.  (*See* Castro Mo. (filed under seal)[2]; Doc. 468.)  Rivas Gomez has identified an expert witness who will testify as to the voluntariness of Rivas Gomez's *Miranda* waiver.  (*See* Doc. 447).  The government has moved to exclude testimony by both immigration officers that Castro has subpoenaed and asked that the Court limit or exclude testimony from both Castro's and Rivas Gomez's experts as to the interrogations.  (Doc. 411)

**A.      Castro's Motion 24 to Reconsider Suppression of Interrogation Statements**

Castro was interrogated three times.  On December 19, 2017, Castro was arrested by immigration authorities pursuant to an immigration warrant.  Approximately 90 minutes later, Castro was arrested by detectives and *Mirandized*.  (Doc. 201 at 7–10.)  He was then questioned for approximately 5.5 hours.  (*Id*. at 10.)  Castro was formally arrested on state kidnapping and gang-related charges on December 20, 2017, and he was again interviewed and *Mirandized* on December 21, 2017.  The third interrogation took place on December 26, 2017.

As to the December 19 interrogation, Castro has repeatedly argued that he received two

---

[1]  The rulings on the motions in limine made here do not preclude either party from raising the admissibility of the evidence discussed here, <u>if the evidence adduced at trial demonstrates a change of circumstances</u>, which would make the evidence admissible.  In this event, the proponent of the evidence **SHALL** raise the issue outside the presence of the jury before seeking to introduce it.  <u>The rulings made here are binding on all parties and not merely on the moving party.</u>

[2]  All of Castro's motions *in limine* were filed in a single document, as was the government's opposition addressing all of Castro's motions.  These documents were filed under seal and will be cited as "Castro Mo." and "Gov't Opp.".  Redacted versions of Castro's motion and the government's opposition are located on the docket at Docs. 451 and 441, respectively.

1   conflicting advisements regarding his responsibility to pay for an attorney: one by immigration

2   officer DO Jacques, and one by the interrogating officers that provided Castro with his *Miranda*

3   rights.  The Court has already rejected Castro's "conflicting advisement" argument because there

4   is no evidence that DO Jacques advised Castro of his immigration rights prior to Castro being

5   *Mirandized* on December 19.  (Doc. 201 at 16.)  The Court rejected Castro's first motion for

6   reconsideration on the same grounds.  (Doc. 364 at 10–11.)

7           Castro again seeks reconsideration on the grounds that he received conflicting

8   advisements.  (Castro Mo. at 4–5.)  In support of this motion, Castro provides a sworn declaration

9   for the first time.  (Castro Mo. at 387.)  This declaration does not claim that DO Jacques advised

10  Castro of his immigration rights on December 19.  Therefore, there is no evidence from which the

11  Court can conclude that Castro's testimony should be excluded due to conflicting advisements.

12  In the alternative, Castro raises a new argument for the first time in this motion: that he did not

13  have the mental capacity to understand *any* rights that authorities read to him that day.

14          Castro swears in his declaration that DO Jacques "tr[ied] to explain some things" to him

15  before other male officers also "tried to explain some things," and he "did not understand

16  anything about what either the female officer or the male officers were saying," including that he

17  "could have asked for an attorney and that the questioning . . . would have ended" if he had done

18  so.  (Castro Mo. at 387.)  The Court will not consider this argument on reconsideration because

19  Castro offers no explanation as to why it could not have been discovered with due diligence and

20  presented to the Court with Castro's previous motions to suppress.  *See Cachil Dehe Band of*

21  *Wintun Indians of Colusa Indian Cmty. v. California*, 649 F. Supp. 2d 1063, 1069 (E.D. Cal.

22  2009) (motions for reconsideration in criminal cases are almost always denied where they rest on

23  arguments or evidence that the moving party could have previously raised).  Indeed, the only

24  person who knew what he was thinking on December 19 was him. Thus, there may be no

25  argument that this information was not known to him at the time he originally filed his motion to

26  exclude his statements. For the reasons described above, Castro's motion to exclude his

27  interrogation statements is again **DENIED**.

28  ///

1    **B.    Government's Motion to Exclude Testimony Related to Castro's Interrogation**

2           **Statements**

3           Because the Court declines to suppress Castro's interrogation statements, he seeks to

4    present his arguments to the jury.  In support of his contention that his interrogation statements

5    were somehow involuntary or improperly solicited, Castro has subpoenaed DO Jacques and

6    another ICE official, DO Romero.  Castro also intends to have expert witnesses speak about his

7    mental capacity and state of mind at the time of the interrogation.  The government moves to

8    preclude most of this testimony as irrelevant, prejudicial, or otherwise inadmissible.  (Doc. 411.)

9           1.    <u>Testimony of DO Jacques and DO Romero</u>

10          Castro intends to call DO Jacques as a witness in order to impeach her and undermine her

11   credibility as to whether she advised Castro of his immigration rights on December 19, 2017.

12   (Doc. 468 at 9–10.). Castro has not specified what testimony he seeks from DO Romero.  The

13   government has moved to preclude testimony from either ICE official on the grounds that it will

14   confuse the jury and has no probative value.  (Doc. 411 at 8–9.)  The Court agrees.  This Court

15   has found twice that there is no factual basis for Castro's claims of conflicting advisements.

16   (Docs. 204 at 16; 364 at 10–11.). Castro has not identified any additional information he may

17   solicit from DOs Jacques or Romero that would allow the jury to conclude otherwise.  The Court

18   therefore **GRANTS** the government's motion. DOs Jacques and Romero may not be called to

19   testify about the advisements given to Castro on December 19, 2017.

20          2.    <u>Testimony of Expert Witnesses: Dr. Ricardo Winkel and Dr. Diomaris Safi</u>

21          Both Defendants argue that, irrespective of the Court's prior decisions declining to

22   suppress their interrogation statements, they may raise with the jury the issue of whether their

23   interrogation statements were voluntary.  18 U.S.C. § 3501(a).  The Defendants are correct that

24   § 3501(a) allows expert witnesses to testify as to the voluntariness of interrogation statements so

25   long as the witnesses clear the required procedural hurdles and do not present opinions about the

26   Defendants' mental states.  *United States v. Morales*, 108 F.3d 1031, 1037–38 (9th Cir. 1997). "A

27   prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily

28   follows, if the testimony is credited, that the defendant did or did not possess the requisite mens

1    rea." *Id.* at 1037.  If the experts' testimony does not necessitate a particular conclusion, the

2    testimony is permitted.

3           Castro has identified expert witness Dr. Ricardo Winkel to testify about Castro's

4    alternative argument that he did not understand what he was told on December 19.  Dr. Winkel is

5    a clinical and forensic psychologist who was retained to evaluate Castro.  In Dr. Winkel's expert

6    report, he concludes that Castro is "severely traumatized" and has such "low intellectual ability"

7    that Castro "does not have the intellectual resources required to comprehend the significance of

8    his [Miranda] rights."  (Doc. 411 at 3 and Ex. B. (filed under seal).)

9           Rivas Gomez has retained Dr. Diomaris Safi to make similar arguments on his behalf.

10   The government moves to exclude the testimony from both Drs. Winkel and Safi on the grounds

11   that it would confuse the jury and have minimal probative value; that this expert testimony will be

12   used improperly as a vehicle for inadmissible hearsay; and that neither expert report on this issue

13   explains how the expert's specialized background would help the jury understand something

14   otherwise outside of a layperson's comprehension as required by Federal Rule of Evidence 702.

15   (Doc. 411 at 4–5.)

16          The Court will reserve ruling on the admissibility of Dr. Winkel's and Dr. Safi's

17   testimony until after a *Daubert* hearings for each expert, which will take place outside the

18   presence of the jury during trial. That being said, expert testimony will not be permitted where it

19   is merely a conduit for inadmissible hearsay, *Williams v. Illinois*, 567 U.S. 50, 79–81 (2012)

20   (citing Fed. R. Ev. 702); where it concerns matters well within the understanding of the average

21   juror, for which "expertise" adds no value, *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir.

22   2002); and where the testimony lacks proper foundation. [3]

23   **C.      Castro's Motion 26 to Suppress Interrogation Statements under *Chambers v. Florida***

24          Castro moves to suppress his December 26, 2019 interrogation statements on the basis

25   that those statements were not "voluntary" under *Chambers v. Florida*, 309 U.S. 1227 (1940).

26

27   [3] For example, the testimony related to Castro's trauma—assuming he will not be testifying as to hearsay statements
     of others—and the results of objective intellectual testing *may* be within the permissible scope, depending upon the
28   outcome of the *Daubert* hearing. The *conclusion* that the defendants cannot or did not understand their Miranda
     rights is, however, a determination purely within the province of the jury.

1    The Court has already held that the December 26 interrogation was conducted in violation of

2    Castro's *Miranda* rights.  As it stands, the only proper use of Castro's December 26 interrogation

3    statements is for impeachment purposes.  (Doc. 204 at 33–34.)

4         Un-*Mirandized* statements that a defendant makes are admissible as impeachment

5    evidence if the statements are voluntary.  *Harris v. New York*, 401 U.S. 222, 224 (1971); *United*

6    *States v. Henry*, No. 1:13-cr-00409-DAD-BAM, 2018 WL 3436826, at *7 (E.D. Cal. July 13,

7    2018), *aff'd*, 798 F. App'x 107 (9th Cir. 2020).  As such, if a defendant made a voluntary

8    statement, the government may use it to impeach the defendant or a defense witness who is

9    recounting what the defendant told him, such as an expert witness.  *United States v. Rosales-*

10   *Aguilar*, 818 F.3d 965, 970 (9th Cir. 2016) (holding that government can use suppressed but

11   voluntary statement to impeach defense psychologist who testified about what defendant told

12   him).

13        Castro argues that his December 26 statements cannot be used even for impeachment

14   purposes because they were not voluntary.  Castro asserts that he was "vulnerable and isolated . . .

15   [and] questioned repeatedly over the course of a week without being taken to court and formally

16   charged."  (Castro Mo. at 7.)  Castro's vulnerability allegedly stems from the fact that he fled

17   from El Salvador for his safety, was fearful of law enforcement, and has PTSD and low

18   intelligence.  (*Id*.)  Castro further argues that he was "isolated" because he was held and moved

19   between correctional institutions from December 19–26 and interrogated for "nearly seven hours"

20   over that same period.  (*Id*.)

21        When considering the voluntariness of a defendant's interrogation statements, 18 U.S.C. §

22   3501(b) directs the trial court to consider "all the circumstances surrounding the giving of the

23   confession," including five factors, none of which is conclusive:

24        (1) the time elapsing between arrest and arraignment of the defendant making the
          confession, if it was made after arrest and before arraignment, (2) whether such
25        defendant knew the nature of the offense with which he was charged or of which
          he was suspected at the time of making the confession, (3) whether or not such
26        defendant was advised or knew that he was not required to make any statement
          and that any such statement could be used against him, (4) whether or not such
27        defendant had been advised prior to questioning of his right to the assistance of
          counsel; and (5) whether or not such defendant was without the assistance of
28

6

1  counsel when questioned and when giving such confession.

2  18 U.S.C. § 3501(b). Courts may also consider "the degree of police coercion; the length, location

3  and continuity of the interrogation; and the defendant's maturity, education, physical condition,

4  mental health, and age."  *Cook v. Kernan*, 948 F.3d 952, 968–69 (9th Cir. 2020).

5  Castro has not alleged facts consistent with a finding that his December 26 statements

6  were involuntary. Though some factors in the analysis favor Castro, such as being questioned

7  before being provided an attorney, the totality of the circumstances weigh in favor of

8  voluntariness.  Castro has not alleged that he was coerced by the police; that his December 26

9  interrogation was unreasonably long or arduous; that he was denied shelter, rest, or food during or

10  between his interrogations; or facts from which the Court may conclude that he was mentally

11  incapable of making voluntary and knowing statements.  *Compare Doody v. Ryan*, 649 F.3d 986

12  (9th Cir. 2011) (in which a juvenile defendant was interrogated with "relentless" interrogation

13  techniques for more than twelve hours before becoming virtually non-responsive).

14  Castro's interrogation also does not bear resemblance to the one warranting suppression in

15  *Chambers*, wherein defendants' statements were the result of five straight days of interrogation

16  followed by an "all night vigil" in which the defendants were surrounded by four to ten men,

17  deprived of sleep, and given only short breaks until one of them confessed.  309 U.S. at 230.

18  Castro, in contrast, was subject to three brief investigations over the period of a week, during

19  which he received proper cared for.  Further, Castro has not addressed why this argument could

20  not have been discovered with due diligence and presented to the Court in his prior motions to

21  suppress.  Therefore, Castro's motion to exclude his December 26, 2017 statements for

22  impeachment purposes is **DENIED.**

23  **GOVERNMENT'S MOTIONS IN LIMINE**

24  **A.     Motions Related to Defendant Castro's Proposed Experts**

25  The government seeks to limit or excludes the testimony by several of Castro's proposed

26  expert witnesses, including Robert Lovato, Robert Winkel,[4] Jesse De la Cruz, and Celeste

27

28  ---

[4]  At the May 26 hearing, the Court ordered Castro to disclose the raw data and other tools that Dr. Winkel used to evaluate Castro.  Any admissibility decision regarding Dr. Winkel's testimony will consider the defense's compliance with this order.

Simmons.  (Doc. 434 at 4.)  Alternatively, the government requests *Daubert* hearings as to these experts.  (*Id.*; *see also* Doc. 411.)  The Court agrees that *Daubert* hearings are appropriate and will be held during trial outside the presence of the jury before these experts are permitted to testify.  As noted above, no expert testimony will be permitted where it is a conduit for inadmissible hearsay, *Williams v. Illinois*, 567 U.S. 50, 79–81 (2012) (citing Fed. R. Ev. 702); where it concerns matters well within the understanding of the average juror, for which "expertise" adds no value, *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002); or where the testimony lacks proper foundation.  The government's motion is **GRANTED IN PART.**

**B.     Motion to Preclude ▮▮▮▮▮▮▮ Deposition Testimony**

Per a stipulation between the parties, (Docs. 305, 307), Castro's counsel conducted a deposition of Castro's mother, ▮▮▮▮▮▮▮▮▮▮▮. The government now moves to preclude any portion of that deposition transcript from being introduced at trial.  (Doc. 391 at 1.) The government raises concern that ▮▮▮▮▮▮ testimony might be "unfairly prejudicial" by eliciting sympathy from the jury without adding significant probative value.  (Doc. 391 at 10.)

As discussed in the May 26 hearing, the Court has admissibility concerns about the portions of the deposition transcript that focus broadly on the characteristics of ▮▮▮▮▮▮ community, her two disabled children, and topics about which ▮▮▮▮▮ does not have proper personal knowledge.  The Court reserves ruling on this motion until Castro identifies the specific portions of the transcript that he seeks to introduce.  Proposed testimony should be limited to facts relevant to Castro's motivation for becoming a government informant that are otherwise admissible and proper under the Federal Rules of Evidence.

**C.     Motion to Admit Co-Conspirator Statements**

The government moves to admit statements by a high-ranking MS-13 member as co-conspirator statements against Rivas Gomez and Castro.  (Doc. 435.)  The government will elicit these statements through a cooperating witness who was a member of MS-13 in 2016–2017. According to the government, this cooperating witness received word from a high-ranking MS-13 member prior to A.R.'s murder that "Rivas Gomez was going to participate in a 'hit' along with other MS-13 members so Rivas Gomez could climb the ranks in MS-13."  (Doc. 435 at 2.)  The

1   cooperating witness was also informed of A.R.'s kidnapping and murder soon after the killing.

2         The government argues that the high-ranking MS-13 member's statement to the

3   cooperating witness was a co-conspirator statement in furtherance of the MS-13 conspiracy that is

4   admissible under Rule 801(d)(2)(E).  Co-conspirator statements are admissible where the

5   government demonstrates by a preponderance of the evidence that (1) a conspiracy existed when

6   the statement was made; (2) both the declarant and the defendant against whom the statement is

7   offered were members of that conspiracy; and (3) the statement was made during the course of,

8   and in furtherance of, the conspiracy.  *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987).

9   Counsel for Defendants raised concerns about the reliability of this testimony, the timing of the

10  statements, and whether the statements were actually "in furtherance" of the conspiracy to kidnap

11  and murder A.R.  (*See* Docs. 440 at 6; 468 at 5.)

12        In making a factual determination of the admissibility of co-conspirator statements under

13  this rule, the Court may consider the statements themselves as well as any other independent

14  evidence of the conspiracy.  *Bourjaily*, 483 U.S. at 180-81; *see* Fed. R. Evid. 104(a).  "[T]he court

15  is not bound by evidence rules."  Fed. R. Evid. 104(a).  Also, the Confrontation Clause does not

16  require the court to make an inquiry into the independent indicia of the reliability of the

17  statement.  *Bourjaily*, 483 U.S. at 182; *see also United States v. Allen*, 425 F.3d 1231, 1235 (9th

18  Cir. 2005) ("[C]o-conspirator statements are not testimonial and therefore beyond the compass of

19  *Crawford*'s holding.")

20        Notably, there is disagreement about when the first statement was made. The government

21  believes the witness will testify that the statement was made about two weeks before the murder.

22  The defense contends that there are inconsistent statements about when the statement was made,

23  including that it was made upwards of 18 months before. Thus, the Court reserves ruling on this

24  motion pending a pretrial Rule 104(c) hearing outside the presence of the jury to evaluate the

25  testimony's admissibility.  The scope of the Rule 104(c) hearing will be limited to establishing

26  the three *Bourjaily* elements for admissibility of co-conspirator statements.

27  ///

28  ///

9

**CASTRO'S MOTIONS IN LIMINE**

**A.    Motion 26 Exclude Evidence of the Machete Found at His Residence**

The Court previously denied Castro's motion to exclude evidence of the machete found within Castro's home.  (Doc. 384 at 7.)  Castro argues now, as he did in his prior motion, that there is no evidence that the machete belonged to him, because he lived with roommates, and its introduction would be unduly prejudicial.  Castro admits that this motion for reconsideration rests on the same grounds as the original motion.  For the same reasons outlined in the Court's previous order, Castro's motion to exclude evidence of the machete found in his home is **DENIED**.

**B.    Motion 27 to Exclude Crime Scene and Autopsy Photographs**

Castro renews his motion to exclude crime scene and autopsy photographs of A.R., whether offered by the government or by Rivas Gomez.  Castro's previous motion to exclude these photos is still pending before the Court.  Castro's renewed motion rests on the same arguments as previously submitted on this issue: that these photos are unduly prejudicial to him and have little probative value.  (Castro Mo. at 9–13.)

Since the Court last heard argument on this motion, Co-Defendant Rivas Gomez has identified a forensic expert who will use three to four crime scene photographs during his testimony.  Furthermore, the government informed the Court that it will seek to admit approximately 46 crime scene or autopsy photographs into the record at trial.

The Court agrees with Defendant Castro that the introduction of *unnecessary* graphic photos may result in undue prejudice. Review of the photos—42 of which were attached to Castro's motion—reveals that nearly all depict gory and gruesome images. There are at least five images of the victim's face and head, seemingly, from the same vantage point. There are several photos of the injuries to the back and buttocks. There are multiple photos of the victim's hand. In many instances, the photos appear to show the same image or show a close-up view of the same image[5]. Most of these injuries are shown again in photos taken during the autopsy, though the

---

[5] The Court does not suggest that an overall view followed by a close-up view is not permitted. However, this type of duplication risks failing the test set forth by Rule 403.

1  autopsy photos, though graphic, are presented in a clinical fashion, which reduces their shock
2  factor.

3        As disturbing as the photos are, the Court does not find that the probative value of *some*
4  photos is substantially outweighed by unfair prejudice. However, the minimal probative value
5  provided by photos that are cumulative or are near duplicates substantially outweighed by their
6  unfair prejudice effect. Thus, the Court will permit the government to use no more than 12 photos
7  crime scene photos, which are not cumulative or duplicates, to establish that which the
8  government must prove. The government may also use the autopsy photos needed by its experts
9  for its case in chief and to counter the defense that Rivas Gomez asserts. Likewise, Rivas Gomez
10 may use the photos he needs to establish his defense.

11       If, after identifying the 12 crime photos and <u>before</u> any photos are introduced, the
12 government believes in good faith it can demonstrate why additional photos are <u>required</u>, the
13 government may raise the issue outside the presence of the jury. At that time, the government will
14 be required to detail to the Court exactly why each seemingly duplicative photo is necessary and
15 to identify its permissible purpose. Consequently, the motion is **GRANTED IN PART** and
16 **DENIED IN PART**.

17 **C.     Motion 28 to Sever Castro's Trial from Rivas Gomez's**

18       Castro renews his earlier request that his trial be severed from Rivas Gomez.  As before,
19 Castro argues that the introduction of post-mortem photographs may cause uncurable prejudice,
20 particularly because he asserts that none of the photos are admissible against him. The
21 government contends that it will argue Castro aided and abetted the kidnapping and murder of
22 A.R.  This argument ignores that the theory of culpability alleged requires the government to
23 prove that Castro acted with motive and intent, which the government argues is demonstrated by
24 the post-mortem photos.  (Gov't Opp. at 24–28.)  Thus, Castro's motion to sever is **DENIED**.

25 **D.     Motion 29 to Preclude** ███████████████████████████████████████

26 ██████████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████████████████

28 ██████████████████████████████████████████████████████████

1  ██████████████████████████████████████████████████████████████████

2  ████████████████████████████████████████████ The Court has already

3  declined to exclude evidence on this basis.  (Doc. 384 at 9.)  ██████████████████

4  ██████████████████████████████████████████████████████████████████

5  ██████████████████ This motion is **DENIED**.

6  **E.      Motion 30 to Exclude Evidence not Disclosed to the Defense**

7       Castro broadly moves for exclusion of evidence that the government intends to use in its

8  case in chief that was not disclosed to the defense by the May 27, 2022 deadline.  This motion is

9  **DENIED WITHOUT PREJUDICE** in favor of a more detailed motion regarding specific,

10  identified evidence at a later date.

11  **F.      Motion 31 to Exclude Evidence of ██████████████████████████████**

12  ██████████████████████████

13  ██████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████

17  █████████████████████████████████████████████████████The Court

18  previously reserved ruling on the admissibility of these claims.  (Doc. 384 at 5.)

19       The Court now holds that the government may introduce this information in its case in

20  chief when the statements are relevant to establishing required elements of the charged offenses.

21  However, ████████████████████████████████████████████████

22  Specifically, the government may introduce testimony regarding ████████████████

23  ████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ████████████████████████████████████

27  ██████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████

12

1 ████████████████████████████████████████████████████████████████

2 ████████████████████ Any evidence of ████████████████ the government intends to use

3 ████████████████████████ must first be brought to the Court's attention outside the presence of

4 the jury.  The Court finds that the probative value of evidence ████████████████

5 ████████████████████████████████████ s substantially outweighed by its prejudicial

6 effect. Thus, this motion is **GRANTED IN PART**.

7     **G.**     **Motions 32 and 33 to Exclude Evidence Related to Withheld Discovery and to**

8            **Dismiss the Case against Castro**

9       Castro files this motion to "bring [] to the Court's attention" likely objections to the

10 government's list of witnesses and exhibits.  (Castro Mo. at 21.)  Castro asserts that the

11 government has failed to meaningfully respond to many of Castro's discovery requests such that

12 the government should be precluded from introducing some related evidence at trial.  The

13 government counters that Castro has made nearly 150 discovery requests that the government has

14 made a good faith effort to fulfill.  (Gov't Opp. at 36.)  For some requests, the government argues

15 that the applicable materials are "not presently discoverable" under *Giglio* and the Jencks Act.

16 (*Id.*)  Castro asserts that these supposed discovery violations "may warrant dismissal," though he

17 admits it is "too early to tell." These motions are **DENIED WITHOUT PREJUDICE**.

18                        **RIVAS GOMEZ'S MOTIONS IN LIMINE**

19       Rivas Gomez's filed two motions *in limine*: one to correct a transcript (Doc. 416), and one

20 to preclude a summary demonstrative exhibit at trial (Doc. 413.)  The government does not

21 oppose either motion, (Docs. 445; 446.)  Rivas Gomez's motions are thereby **GRANTED**.

22                              **CONCLUSION**

23       For all of the reasons explained above:

24     1.  Castro's Motion 24 to reconsider suppression of his interrogation statements is

25         **DENIED**.

26     2.  The government's motion to exclude the testimony of DO Jacques and DO Romero as

27         to whether Castro received conflicting rights advisements on December 19, 2017

28         (Doc. 411) is **GRANTED.**

3. The government's motion for a *Daubert* hearing as to Dr. Ricardo Winkel and Dr. Diomaris Safi (Doc. 411) is **GRANTED**.

4. Castro's Motion 26 to suppress his December 26, 2017 interrogation statement under *Chambers v. Florida* is **DENIED**.

5. The government's motion for *Daubert* hearings as to defense experts Robert Lovato, Ricardo Winkel, Jesse De la Cruz, and Celeste Simmons (Doc. 434) is **GRANTED**.

6. The Court reserves ruling on the government's motion to preclude testimony from ▮▮▮▮▮▮▮▮▮▮ deposition (Doc. 391).

7. The Court reserves ruling on the government's motion to admit co-conspirator statements (Doc. 435) pending a Rule 104(c) hearing.

8. Castro's Motion 26 to exclude evidence of the machete found in his home is **DENIED**.

9. Castro's Motion 27 to exclude crime scene and autopsy photographs is **GRANTED in PART** and **DENIED IN PART**.

10. Castro's Motion 28 to sever his trial from Rivas Gomez's trial is **DENIED**.

11. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ is **DENIED**.

12. Castro's Motion 30 to exclude evidence not properly disclosed to the defense is **DENIED WITHOUT PREJUDICE** in favor of a more specific motion at a later time.

13. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ is **GRANTED IN PART**.

14. Castro's Motions 32 and 33 to exclude evidence related to withheld discovery and dismiss the case are **DENIED WITHOUT PREJUDICE** in favor of a more specific motion at a later time.

15. Rivas Gomez's motion to correct a transcript (Doc. 416) is **GRANTED.**

///

///

16. Rivas Gomez's motion to preclude a summary demonstrative exhibit at trial (Doc. 413) is **GRANTED**.

IT IS SO ORDERED.

Dated:  __**May 31, 2022**__

UNITED STATES DISTRICT JUDGE

15