UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISRAEL ALBERTO RIVAS GOMEZ and JOHN DOE aka "MARCOS CASTRO",<br><br>Defendants. | No. 1:18-cr-00002-JLT-SKO<br><br>ORDER DENYING RIVAS GOMEZ'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL<br><br>(Doc. 694) |

**I.    BACKGROUND**

Israel Rivas Gomez is charged in a two-count indictment with kidnapping in aid of racketeering and murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1). (Doc. 13.) The indictment alleges that defendant Rivas Gomez was a member or associate of criminal gang MS-13 and that the charged crimes were committed "for the purpose of gaining entrance to and maintaining and increasing position in" that organization. (*Id*. at 13, 14.) MS-13, in turn, is alleged in the indictment to be "an enterprise engaged in racketeering activity." (*Id.*) After the close of evidence and arguments were submitted, Mr. Rivas Gomez renewed his motion for judgment of acquittal (Doc. 694). For the reasons set forth below, the motion is **DENIED**.

**II.    Analysis**

Fed.R.Crim.P. 29(a) provides, in pertinent part, that a defendant may move for judgement

1

of acquittal after the close of all evidence and before the jury has returned a verdict. In reviewing a challenge to the sufficiency of the evidence, the court must ask whether, viewing "the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hursh,* 217 F.3d 761, 767 (9th Cir. 2000) (quoting *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996) ); see also *United States v. Garrison*, 888 F.3d 1057, 1063 (9th Cir. 2018). The Supreme Court has established a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc) (citing Jackson, 443 U.S. at 319, 99 S.Ct. 2781). "Second, the reviewing court must determine whether this evidence, so viewed, is adequate to allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *United States v. Katakis*, 800 F.3d 1017, 1023 (9th Cir. 2015) (internal ellipses and quotation marks omitted) (quoting *Nevils*, 598 F.3d at 1164). "[E]vidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case, or where there is a total failure of proof of a requisite element." *Id*. (internal quotation marks and citations omitted). However, "the government does not need to rebut all reasonable interpretations of the evidence that would establish the defendant's innocence, or 'rule out every hypothesis except that of guilt beyond a reasonable doubt.' " *Nevils*, 598 F.3d at 1164 (quoting *Jackson*, 443 U.S. at 326,); see also *United States v. Aubrey*, 800 F.3d 1115, 1127 (9th Cir. 2015).

### A.   Membership in MS-13

The evidence presented at trial demonstrates that MS-13 is an international criminal gang, which engages in drug trafficking and weapons crimes, among other crimes. The gang is ultra-violent and has been suspected of numerous murders, beatings and attacks in the Mendota, California area in the years 2015 through 2017. The gang uses violence and threats of violence against rival gang members—most particularly, the Bulldogs criminal street gang—to protect the gang's criminal ventures, to promote its reputation and to keep its victims and the community in

fear of MS-13.

The evidence presented demonstrates that as of December 2017, Mr. Rivas-Gomez had been a member of the gang for at least one year. He attended meetings of the gang, had indicia of membership in his personal possessions in his home, he frequented gang hangouts and socialized with known gang members. Before December 2017, the evidence demonstrates that the gang higher-ups intended Rivas-Gomez to increase in stature in the gang, which required him to commit murder.

### B. Kidnapping and Murder Abel Rodriguez

The evidence demonstrates that on the evening of December 18, 2017, Rivas-Gomez was called to the scene of the canal bank, where MS-13 gang members held Abel Rodriquez in their custody.  At some point, the string that had held Abel Rodriquez's hands together had been cut. Part of the string was found in codefendant Marcos Castro's car. Even still, a reasonable inference is that the string was cut after Rivas-Gomez arrived because before that time, only Castro and another were present to prevent Rodriguez from escaping. Inferences from the evidence support that Rivas-Gomez was called to the scene of the kidnapping and that he stayed while the crimes were underway—though Castro was told to leave—was because Rivas-Gomez was going to participate in the killing, allowing him to achieve the status of "homeboy."

Once Rivas-Gomez and those he brought with him arrived, they forced Rodriguez into Rivas-Gomez's car and Rivas-Gomez drove them to a remote spot. At that second location, the group stabbed Rodriguez 60-70 times and chopped him at least 24 times. Rivas-Gomez witnessed what the others were doing and saw what they had done, and he inflicted wounds too. Of the more than 80 wounds suffered by Rodriguez, Rivas-Gomez inflicted three stab wounds to Rodriguez's abdomen and three chop wounds to Rodriguez's head. A reasonable inference from the location of the wounds is that Rivas-Gomez intended Rodriguez to die.

The evidence from Dr. Chambliss demonstrates that the chopping blows inflicted on Rodriguez's head and face were devastating. Despite this, the evidence shows that Rodriguez lived for some amount of time after receiving wounds to his head. Rodriguez also suffered many defensive wounds, also indicating that he lived for an amount of time after the attack began.

Many of the stabbing wounds to the abdomen were also inconsistent with life. Consequently, Dr. Chambliss determined that Rodriguez died of head and abdominal wounds caused by stab and chop wounds.

Taking the evidence in the light most favorable to the government, the Court concludes that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Consequently, the motion for judgment of acquittal (Doc. 694) is **DENIED.**

IT IS SO ORDERED.

Dated:   **September 26, 2022**

UNITED STATES DISTRICT JUDGE